BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MARC A. GARCIA,**<br>   19701 East Country Club Drive<br>   Apartment 507<br>   Aventura, Florida  33180<br><br>          **Plaintiff,**<br><br>     v.<br><br>**CONDOLEEZZA RICE,**<br>   In Her Official Capacity as Secretary,<br>   United States Department of State<br>  2201 C Street, N. W.<br>  Washington, D. C.  20520-4216<br><br>          **Defendant.**<br><br>**Also Serve:**<br><br>  United States Attorney for the<br>   District of Columbia<br>  555 4th Street, N. W.<br>  Washington, D. C.  20001-2733 | **CIVIL ACTION**<br><br>**CASE NO. _____** |

## COMPLAINT

**(UNLAWFUL DISCRIMINATION IN FEDERAL EMPLOYMENT BASED
UPON RACE, NATIONAL ORIGIN, COLOR, AND UNLAWFUL
RETALIATION FOR PROTECTED EEO ACTIVITIES)**

COMES NOW the Plaintiff in this matter, Mr. Marc A. Garcia, appearing by and through counsel, to respectfully file this Complaint against the aforenamed Defendant, Condoleezza Rice, in her official capacity as Secretary, United States Department of State, and in furtherance hereof states as follows:

## I. JURISDICTION

1. Jurisdiction is vested in this Court pursuant to, inter alia, Section 717 of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. Section 2000(e), et seq.; the Civil Rights Act of 1991, as amended, codified at 42 U.S.C.A. Section 1981, et seq.; the Civil Rights Attorney's Award Act, as amended, codified at 42 U.S.C.A. Section 1988, et seq.; and Title 29, Code of Federal Regulations, Part 1614, et seq., in that Plaintiff Marc A. Garcia was discriminated against unlawfully in employment by the United States Government, and specifically by his employer the Department of State, on the basis of his race (African-American), national origin (Hispanic), color (Black), and was further unlawfully retaliated against in such employment for engaging in protected EEO activities, as identified herein.

## II. VENUE

2. Venue is proper before this Court because the Defendant maintains its Headquarters within the geographical boundaries of the District of Columbia; because Defendant maintains its Headquarters administrative offices and records which are subject to the matters complained of within the geographical boundaries of the District of Columbia; because adverse determinations and actions regarding Plaintiff Garcia, as stated and complained of herein, were made in substantial part within the boundaries of the District of Columbia; and pursuant to 28 U.S.C. Section 1391(e).

## III. PARTIES

3. Plaintiff Marc A. Garcia is an African-American, Hispanic and Black male and, for all times relevant herein, has been employed as a Special Agent with the Diplomatic Security Service (DSS) of the United States Department of State. Plaintiff

currently resides at 19701 East Country Club Drive, Apartment 507, Aventura, Florida 33180. As a Black and Hispanic African-American, Plaintiff is a member of a protected class pursuant to the Civil Rights Act of 1964 (Title 42, U. S. Code Ann. Section 2000e, et seq.) and the Civil Rights Act of 1991 (Title 42, U. S. Code Ann. Section 1981, et seq.).

  4. Defendant Condoleezza Rice is the United States Secretary of State and is the Defendant herein by virtue of her official position. Secretary Rice is the senior Executive Branch federal official responsible for the actions of the United States Department of State, and its officials and employees.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

  5. On March 29, 2005, a Department of State Final Agency Decision (FAD) was issued regarding Plaintiff Garcia's formal complaints of unlawful discrimination and retaliation based upon race (African-American), national origin (Hispanic), color (Black), and prior protected EEO activities.

  6. Department of State EEO Case No. F-022-04 was timely filed by the Plaintiff on February 4, 2004, following Plaintiff's initial contact with an EEO Counselor on a date not later than October 20, 2003.

  7. By the Defendant's letter dated April 7, 2004, the following specific issues were initially accepted for investigation in EEO Case No. F-022-04, and are hereby incorporated and included as specific claims for this Federal Court lawsuit: Whether, as an act of reprisal and because of Plaintiff's race (African-American), national origin (Hispanic), color (Black), and reprisal for prior protected EEO activity, Plaintiff was discriminated against when (1) During the period of September 18, 2003, through

3

September 29, 2003, he was denied an opportunity to work in an Agent-in-Charge (AIC) position; and, (2) During the period of September 18, 2003, through September 29, 2003, he was denied the opportunity to work a day shift position commensurate with his grade, experience, and seniority; and, (3) On October 10, 2003, he was denied promotion from a Grade FS-03 to a Grade FS-02.

       8.       By the Defendant's letter dated June 28, 2004, Complaint EEO Case No. F-022-04 was amended, and the following claim was added and is hereby incorporated and included as a specific additional claim for this Federal Court lawsuit: Whether, as an act of reprisal and because of Plaintiff's race (African-American), national origin (Hispanic), color (Black), and reprisal for prior protected EEO activity, Plaintiff was discriminated against when, on May 17, 2004, he was removed from his position as Resident Special Agent-in-Charge of Diplomatic Security for the San Juan Resident Office located in Puerto Rico and relocated to a Unit Supervisor position in the Diplomatic Security Miami Field Office.

       9.       By the Defendant's letter dated August 9, 2004, Complaint EEO Case No. F-022-04 was further amended, and the following claim was added and is hereby incorporated and included as a specific additional claim for this Federal Court lawsuit: Whether, as an act of reprisal and because of Plaintiff's race (African-American), national origin (Hispanic), color (Black), and reprisal for prior protected EEO activity, Plaintiff was discriminated against when, on May 17, 2004, the Plaintiff was non-selected for four Agent-in-Charge positions (Position Nos. 171820/S5836908 (DS/P/DP); 171820/S5836904 (DS/P/DP); 171820/S5836906 (DS/P/DP); 171820/S5836907

(DS/P/DP)); and an Agent position (Position No. 171830/S6017901 (DS/P/PL), for which he applied.

10. Plaintiff also alleges that he timely filed the following additional claims based upon an ongoing pattern of racial hostility and reprisal against him, including: (1) That because of Plaintiff's race (African-American), national origin (Hispanic), color (Black), and reprisal for prior protected EEO activity, Plaintiff was discriminated against when he was denied promotion from the Grade FS-03 to FS-02 on an annual and recurring basis between 1993 to the present; and, (2) That because of Plaintiff's race (African-American), national origin (Hispanic), color (Black), and reprisal for prior protected EEO activity, Plaintiff was discriminated against when he was subjected to a hostile work environment beginning in 1986, characterized by disparaging and racially-motivated remarks and comments by his superiors and co-workers, given unnecessary interrogations in the course of periodic security clearances, and was subject to threats to improperly remove his security clearance.

11. Plaintiff Garcia, acting within ninety (90) days of his receipt of the Final Agency Decision involving EEO Case No. F-022-04, which receipt occurred through service by United States mail, now timely files this United States District Court Complaint asserting the above-stated claims.

## V.  BACKGROUND

12. In 1998, Plaintiff Garcia raised personally with the Director of Diplomatic Security several complaints of ongoing past discrimination practiced against African-American, Hispanic and Black Special Agents of the Diplomatic Security Service, including himself.

13.     Included in the extensive history of racial discrimination against Plaintiff Garcia, the following incidents occurred during the period of approximately 1986 through 2002:

14.     In approximately 1986 or 1987, Plaintiff was subjected to several derogatory and insulting comments in his Diplomatic Security (DS) training course conducted at the Federal Law Enforcement Training Center (FLETC). Many of such comments constituted racial epithets, including Plaintiff being referred to as a "nigger" and "coon" by Special Agent Jeff Thomas. When Plaintiff challenged these remarks, he was told by Special Agent Jay Goodrich to not be "so sensitive, it is only a joke." Also, during this DS training, Special Agent Jay Goodrich stated that the class had one Black, one Hispanic and one woman. When it was pointed out to SA Goodrich that the previous class had five Blacks, he stated: "Five Blacks in one class must be a mistake, the average is one or two."

15.     The DS training conducted at the Federal Law Enforcement Training Center continuously depicted African-Americans, Black and Hispanics, including Plaintiff Garcia, as criminal stereotypes. Such training included a scenario describing, in effect, as follows: "You are a law enforcement officer and you see a Black man, and the Black man sees the police and starts running down the street. So you chase him and frisk him and find a crack pipe; is that a legal frisk or search and seizure?"

16.     Plaintiff Garcia was subjected to numerous comments on his periodic performance appraisals as "needs improvement," which Plaintiff discovered was used frequently with African-American special agents as a means of criticizing them and quietly blocking their promotions.

6

17. In another early part of Plaintiff's career, during his assignment to New York City, he was continually assigned to drive a limousine for Protective Details. This was a common practice in Diplomatic Security in New York, because of the perception among the Defendant's supervisors that "all chauffeurs are Black."

18. In the course of Plaintiff's career, he observed that white male Special Agents with less seniority than Black Special Agents were selected to be Shift Leaders and given Advance Agent assignments, while more senior and experienced Black Special Agents were then assigned under them. One such white male selected over Plaintiff as a shift leader was Special Agent Pasquale Caprigilone. In one incident SA Caprigilone allowed a driver to drive at excessive and dangerous speeds. When SA Caprigilone was challenged about this by Plaintiff Garcia, SA Caprigilone stated to Plaintiff: "Who do you think they are going to believe, a smart white boy like me or a dumb nigger?"

19. Black Special Agents, including Plaintiff Garcia, also were selected for many more dangerous undercover assignments while stationed in New York City. Despite leading the New York Field Office in arrests for several years, Plaintiff Garcia was passed over by white male Special Agents for FS grade promotions and Unit Supervisor positions.

20. In approximately 1990, several white Diplomatic Security special agents fabricated information about Plaintiff Garcia, resulting in a criminal trial in the United States District Court for the District of Columbia. Plaintiff was acquitted, with the Court stating that the trial was a "waste of three days time." One of the individuals who had raised allegations against Plaintiff, Special Agent Passilico, stated to Plaintiff in front of

Plaintiff and his parents: "If Marc's trial was held in Fairfax County, they would have hanged him. But DC is black, ghetto, and the DC courts are full of homeboys."

21. Another white Special Agent, SA George Gains, stated to Plaintiff Garcia shortly after the Martin Luther King, Jr., holiday, that "they should kill some more Blacks and we would have the whole week off from work." When confronted by Plaintiff Garcia's observation that the comment was racist, SA Gains said that it was a joke he had heard on the radio.

22. When Plaintiff Garcia worked at the American Ambassador's residence in Bujumbura, Burundi, his supervisor, Special Agent Steve Jenkins, often referred to "niggers" having no education, having too many babies, were too often on welfare, and they committed many crimes. His frequent bigoted comments including referring to Dr. King as a womanizer and a Communist, and that white people had dominated "niggers, niggras, colored people, blacks, and now African-Americans."

23. In the course of one promotion panel at which Plaintiff Garcia was being considered for promotion, it was reported to Plaintiff Garcia that he had been referred to with the comment, "I would not give that nigger a job as a dog catcher." When Plaintiff Garcia made his knowledge of the statement known, he was criticized by senior Diplomatic Security personnel for knowing statements which had been made in a "closed door meeting," where "frank and honest" comments could ostensibly be made without outside knowledge. On information and belief, no investigation was conducted with respect to who made such comment.

24. Several additional comments were made to Plaintiff Garcia that he had been "black balled" by senior personnel in the Diplomatic Security Service, and that he

8

would not be promoted because of his challenges to racial epithets and bigotry within the Department of State Diplomatic Security Service.

25. In approximately 2001, Plaintiff Garcia bid for and was selected by a panel to fill a position designated for Grade FS-2, a promotion from his Grade FS-3 rank which he had held for several years. Plaintiff subsequently was informed that the position "was already filled," that the local supervisor assigned people internally, and that Plaintiff Garcia would be placed into a Grade FS-3 position.

26. Upon Plaintiff Garcia's assignment as Regional Security Officer (RSO) at the American Embassy in Nassau, Bahamas, Special Agents Peter Hargraves, George Heritage and others attempted to delay Plaintiff's arrival at the Post to enable a white male subordinate-designee of Plaintiff, Special Agent Steve Click, a longer period of time as Acting RSO and to bolster his performance evaluation. Further, SA Hargraves openly opposed the assignment of Plaintiff Garcia to the Post of RSO.

27. In 2002, the Diplomatic Security and Suitability Branch harassed Plaintiff Garcia through e-mail and telephone calls constantly and openly demanding that Plaintiff provide his mental health medical records when, in fact, Plaintiff Garcia had never received any mental health treatment or counseling.

28. In December 2002, a Background Investigator from the Miami Field Office, while conducting a routine 5-year update of Plaintiff Garcia's top secret and special access security clearance, harassed Plaintiff Garcia and threatened to "take away" his security clearance because of allegations arising from the period 1986 through 1991, well outside of the permitted scope of the security clearance review.

29. During the period of September 18, 2003, through September 29, 2003, while Plaintiff Garcia was working at the United Nations General Assembly on a special assignment, he was denied an opportunity to work in an Agent-in-Charge (AIC) position, despite being senior in grade and experience to white special agents who were placed in such positions.

30. During this same period of September 18 through 29, 2003, while on assignment at the United Nations, Plaintiff Garcia was denied the opportunity to work on a day shift position commensurate with his grade, experience, and seniority, while white special agents of less seniority, grade and experience were given day shift supervisor positions.

31. On October 10, 2003, Plaintiff Garcia was denied promotion from a Grade FS-03 to a Grade FS-02, despite being in a Grade FS-02 position and assignment.

32. On or about November 30, 2003, while Plaintiff Garcia was on a temporary duty detail to the American Embassy in Riyadh, Saudi Arabia, Special Agent Hoyt Alexander told Plaintiff Garcia that he had heard a rumor that Plaintiff had been arrested in Nassau, Bahamas, and "got kicked out of the country." This was a further effort to discredit and black-ball Plaintiff Garcia by his supervisors, who had spread false information and rumors about him.

33. On May 17, 2004, Plaintiff Garcia was improperly, unfairly and without just cause removed from his position as Resident Special Agent-in-Charge of Diplomatic Security for the San Juan Resident Office located in Puerto Rico, and relocated to a Unit Supervisor position in the Diplomatic Security Miami Field Office. This action was in furtherance of the ongoing pattern of unlawful discrimination and retaliation which was

directed against him by senior and supervisory personnel within the Diplomatic Security Service, and was specifically intended to discredit Plaintiff Garcia's reputation and service record.

34. Further on May 17, 2004, Plaintiff Garcia was unfairly and unreasonably non-selected for four vacant Agent-in-Charge positions for which he had applied, specifically Position Nos. 171820/S5836908 (DS/P/DP); 171820/S5836904 (DS/P/DP); 171820/S5836906 (DS/P/DP); 171820/S5836907 (DS/P/DP).

35. Also on May 17, 2004, Plaintiff Garcia was not selected for a vacant Agent position, Position No. 171830/S6017901 (DS/P/PL), for which he had applied.

36. The active, discriminatory, and retaliatory efforts of senior and supervisory Diplomatic Security Service officials to prevent Plaintiff Garcia from being promoted with his peers from the Grade FS-03 to FS-02 continued on an annual and recurring basis between 1993 through at least 2004.

37. During this prolonged period of time during which Plaintiff Garcia was being discriminated against based upon his race, national origin, and color, and was subject to unlawful retaliation because of his prior protected EEO activities, he possessed greater educational qualifications (holding a Bachelor's degree and having attended graduate school); held greater Diplomatic Security job experience and seniority; had received more Diplomatic Security awards and recognitions; had greater military experience; held higher military rank (major and lieutenant colonel in the United States Army Reserve); had greater military experience (as a Gulf War veteran); had completed more military and civilian advanced training courses; had received higher annual performance reviews; and held superior credentials in all applicable standard measures of

merit; over the white Special Agents selected over him for promotion and preferential job assignments.

38. Because of the unlawful discrimination based upon race, national origin and color cited herein, and further because of the unlawful retaliation for his prior protected activities, Plaintiff Garcia has suffered and will continue to suffer from lost personal esteem, personal stress, personal humiliation, and acute mental pain and suffering.

## COUNT I – UNLAWFUL DISCRIMINATION AND RETALIATION
### (Hostile Work Environment)

39. Paragraphs 1-38 are herein incorporated by reference.

40. As a result of the aforestated unlawful discrimination based upon his race (African-American), national origin (Hispanic), and color (Black), and unlawful retaliation for his prior protected EEO activities, Plaintiff Garcia was subjected to discriminatory and humiliating treatment through the exposure by the Defendant of Plaintiff to racial epithets, discriminatory and humiliating language, adverse, demeaning and discriminatory treatment during training, and a consistently hostile work environment during the period of 1985 through at least 2004.

## COUNT II – UNLAWFUL DISCRIMINATION AND RETALIATION
### (Job Assignments)

41. Paragraphs 1-40 are herein incorporated by reference.

42. As a result of the aforestated unlawful discrimination based upon his race (African-American), national origin (Hispanic), and color (Black), and unlawful retaliation for his prior protected EEO activities, Plaintiff Garcia was subjected to unfair, hostile, discriminatory and retaliatory job assignments, including his denial of appropriate

merit; over the white Special Agents selected over him for promotion and preferential job assignments.

38. Because of the unlawful discrimination based upon race, national origin and color cited herein, and further because of the unlawful retaliation for his prior protected activities, Plaintiff Garcia has suffered and will continue to suffer from lost personal esteem, personal stress, personal humiliation, and acute mental pain and suffering.

## COUNT I – UNLAWFUL DISCRIMINATION AND RETALIATION
### (Hostile Work Environment)

39. Paragraphs 1-38 are herein incorporated by reference.

40. As a result of the aforestated unlawful discrimination based upon his race (African-American), national origin (Hispanic), and color (Black), and unlawful retaliation for his prior protected EEO activities, Plaintiff Garcia was subjected to discriminatory and humiliating treatment through the exposure by the Defendant of Plaintiff to racial epithets, discriminatory and humiliating language, adverse, demeaning and discriminatory treatment during training, and a consistently hostile work environment during the period of 1985 through at least 2004.

## COUNT II – UNLAWFUL DISCRIMINATION AND RETALIATION
### (Job Assignments)

41. Paragraphs 1-40 are herein incorporated by reference.

42. As a result of the aforestated unlawful discrimination based upon his race (African-American), national origin (Hispanic), and color (Black), and unlawful retaliation for his prior protected EEO activities, Plaintiff Garcia was subjected to unfair, hostile, discriminatory and retaliatory job assignments, including his denial of appropriate

positions of authority and responsibility while assigned to United Nations special agent security duty during the period September 18 through September 29, 2003.

43.  As a result of the aforestated unlawful discrimination based upon his race (African-American), national origin (Hispanic), and color (Black), and unlawful retaliation for his prior protected EEO activities, Plaintiff Garcia was subjected to an unfair, hostile, discriminatory and retaliatory job assignment when, on May 17, 2004, Plaintiff Garcia was improperly, unfairly and without just cause removed from his position as Resident Special Agent-in-Charge of Diplomatic Security for the San Juan Resident Office located in Puerto Rico, and relocated to a Unit Supervisor position in the Diplomatic Security Miami Field Office.

### COUNT III – UNLAWFUL DISCRIMINATION AND RETALIATION
### (Promotions in General)

44.  Paragraphs 1-43 are herein incorporated by reference.

45.  As a result of the aforestated unlawful discrimination based upon his race (African-American), national origin (Hispanic), and color (Black), and unlawful retaliation for his prior protected EEO activities, Plaintiff Garcia was subjected to unfair, hostile, discriminatory and retaliatory treatment in employment when he was consistently and systemically denied promotion from Grade Grade FS-03 to FS-02 on an annual and recurring basis between 1993 through at least 2003.

### COUNT IV – UNLAWFUL DISCRIMINATION AND RETALIATION
### (Specific Promotions)

46.  Paragraphs 1-45 are herein incorporated by reference.

47.  As a result of the aforestated unlawful discrimination based upon his race (African-American), national origin (Hispanic), and color (Black), and unlawful

retaliation for his prior protected EEO activities, Plaintiff Garcia was subjected to unfair, hostile, discriminatory and retaliatory treatment in employment when, on October 10, 2003, he was denied promotion from a Grade FS-03 to a Grade FS-02 rank, despite then being assigned and performing fully satisfactorily in a Grade FS-02 position.

  48. As a result of the aforestated unlawful discrimination based upon his race (African-American), national origin (Hispanic), and color (Black), and unlawful retaliation for his prior protected EEO activities, Plaintiff Garcia was subjected to unfair, hostile, discriminatory and retaliatory treatment in employment when, on May 17, 2004, he was denied promotion from a Grade FS-03 to Grade FS-02, in any of the following four vacant Agent-in-Charge positions for which he had applied, specifically Position Nos. 171820/S5836908 (DS/P/DP); 171820/S5836904 (DS/P/DP); 171820/S5836906 (DS/P/DP); 171820/S5836907 (DS/P/DP).

  49. As a result of the aforestated unlawful discrimination based upon his race (African-American), national origin (Hispanic), and color (Black), and unlawful retaliation for his prior protected EEO activities, Plaintiff Garcia was subjected to unfair, hostile, discriminatory and retaliatory treatment in employment when, on May 17, 2004, Plaintiff Garcia was not selected for promotion from Grade FS-03 to Grade FS-02 in a vacant Agent position, Position No. 171830/S6017901 (DS/P/PL), for which he had applied.

**PRAYER FOR RELIEF**

  50. Paragraphs 1-49 are herein incorporated by reference.

WHEREFORE, Plaintiff Garcia respectfully requests that this Court enter judgment against Defendant and grant Plaintiff the following relief:

(1)  Adjustment of Plaintiff's personnel and finance records to reflect the appropriate date of promotion to Grade FS-02, pursuant to the findings and Judgment of this case.

(2)  Payment of all accrued back pay and allowances, with accrued interest at the legal rate of recovery, from the date of the failure of Defendant to promote Plaintiff to the Grade of FS-03 to Grade FS-02, as cited herein, through the date of the Judgment in this proceeding.

(3)  Payment of all appropriate front pay and allowances based upon Plaintiff's recalculated promotion date to Grade FS-02, including calculated Grade and Step increases from the determined date of promotion, in the amount calculated pursuant to Plaintiff's financial records and applicable projected pay scales and to be determined.

(4)  Payment to Plaintiff of $300,000 in compensatory damages.

(5)  Specified and priority placement into a senior course of instruction and training intended for senior Special Agents in the Diplomatic Security Service.

(6)  Payment of reasonable attorneys' fees and reimbursement of the costs and expenses of this litigation, based upon law and applicable <u>Laffey</u> standards pertinent to the District of Columbia.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule 38(b), trial by jury on all issues presented herein is respectfully demanded.

        Respectfully submitted,


        _____/S/_____
        Michael W. Beasley, Esq.
        D. C. Bar No. 248930
        411 East Broad Street
        Falls Church, Virginia  22046
        Phone:  (703) 241-2909; Fax:  (703) 241-5885
        E-Mail:  "beasleys@erols.com"

        On behalf of Plaintiff Marc A. Garcia

June 28, 2005